**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

|  |  |
|---|---|
| IVAN ARCOS,<br>*on behalf of himself,*<br>*FLSA Collective Plaintiffs*<br>*and the Class,*<br><br>                           Plaintiff,<br><br><br><br>                       v.<br><br>52 W 33 ASSOCIATES LLC,<br>       d/b/a PETIT POULET,<br>HERALD HOTEL ASSOCIATES, L.P.,<br>       d/b/a RADISSON MARTINIQUE BROADWAY<br>KELLARI PAREA, LLC,<br>       d/b/a THE KELLARI HOSPITALITY GROUP<br>STAVROS AKTIPIS, and<br>HAROLD THURMAN,<br><br>                    Defendants. | Case No.:<br><br>**CLASS AND**<br>**COLLECTIVE ACTION**<br>**COMPLAINT**<br><br>Jury Trial Demanded |

---

       Plaintiff, IVAN ARCOS, ("Plaintiff"), on behalf of himself and others similarly situated,

by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint

against Defendants, 52 W 33 ASSOCIATES LLC, d/b/a PETIT POULET, HERALD HOTEL

ASSOCIATES, L.P., d/b/a RADISSON MARTINIQUE BROADWAY, and KELLARI PAREA,

LLC, d/b/a THE KELLARI HOSPITALITY GROUP, (the "Corporate Defendants"), STAVROS

1

AKTIPIS, and HAROLD THURMAN (the "Individual Defendants", and collectively with the Corporate Defendants, the "Defendants") and states as follows:

## INTRODUCTION

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid minimum wages, (2) liquidated damages, and (3) attorneys' fees and costs.

2.      Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), he and others similarly situated are entitled to recover from Defendants: (1) unpaid minimum wages, (2) statutory penalties, (3) liquidated damages, and (4) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

4.      Venue is proper in the Southern District pursuant to 28 U.S.C. §1391 because one or more of the Defendants reside therein.

## PARTIES

5.      Plaintiff, IVAN ARCOS, for all relevant time periods, was a resident of Jersey City, NJ.

6.      Corporate Defendant, 52 W 33 ASSOCIATES LLC, d/b/a PETIT POULET (the "Restaurant"), is a domestic business corporation organized under the laws of New York, with a principal place of business located at 49 W 32nd Street, 2nd Floor, New York, NY, 10001. Attached hereto as **Exhibit A** is a Permit/License evidencing the Restaurant's permittee/licensee name of "52 W 33 ASSOCIATES LLC, PETIT POULET".

2

7.     Corporate Defendant, HERALD HOTEL ASSOCIATES, L.P., d/b/a RADISSON MARTINIQUE BROADWAY (the "Hotel"), is a domestic business corporation organized under the laws of New York, with a principal place of business located at 1260 Broadway, a.k.a. 49 W 32nd Street, New York, NY, 10001.

8.     KELLARI PAREA, LLC, d/b/a THE KELLARI HOSPITALITY GROUP ("THE KELLARI HOSPITALITY GROUP"), is a domestic business corporation organized under the laws of New York, with a principal place of business located at 19 West 44th Street, New York, NY, 10036.

9.     Individual Defendant, STAVROS AKTIPIS, is a principal and owner of THE KELLARI HOSPITALITY GROUP.

10.    Individual Defendant, HAROLD THURMAN, is a principal and owner of HERALD HOTEL ASSOCIATES, L.P., d/b/a RADISSON MARTINIQUE BROADWAY.

11.    The Restaurant and the Hotel are commonly operated by Defendants. The Restaurant provides room service to the Hotel, and is advertised on the Hotel's website: https://www.themartinique.com/about.html. Attached hereto as **Exhibit B** is a description of the Restaurant included in the Hotel's service introduction.

12.    Defendants operate as a single integrated enterprise. Specifically, The Restaurant, PETIT POULET, and the Hotel, RADISSON MARTINIQUE BROADWAY, are engaged in related activities and share common ownership:

    a. The Restaurant and the Hotel are located in the same building but use different entrances, which clarifies the difference of addresses;

    b. The Restaurant provides room service to all guests staying in the Hotel. Employees at the Restaurant, PETIT POULET, are responsible for taking room service orders

from all guests of the Hotel, and are also responsible for delivering those orders to guests;

 c. Employees are interchangeable among the Restaurant and the Hotel. Plaintiff in fact started his employment with Defendants at Cafe Martinique, a Café located in the Hotel building. After Cafe Martinique closed in July 2018, Plaintiff was transferred to the Restaurant, PETIT POULET. Other employees similarly were transferred on an as-needed basis.

13. The Restaurant is operated by Defendant THE KELLARI HOSPITALITY GROUP, who opened and operates the following restaurants as advertised on its website https://kellarigroup.com/gallery/:

 a. CESCA

 b. ELYSSIAN FIELDS CAFE

 c. KELLARI DC

 d. KELLARI NY

 e. MARTINIQUE CAFE

 f. PETIT POULET

 g. STRIPHOUSE

Attached hereto as **Exhibit C** is a list of the restaurants operated by Defendant THE KELLARI HOSPITALITY GROUP from the its website.

14. Individual Defendants, STAVROS AKTIPIS, exercised control over the terms and conditions over Plaintiffs' employment and those of FLSA Collective Plaintiff and other Class members. With respect to Plaintiffs, Individual Defendant, STAVROS AKTIPIS, exercised functional control over the business and financial operations of the Corporate Defendants.

Individual Defendant, STAVROS AKTIPIS, had the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs and Class members, and could reprimand employees.

15.     Individual Defendants, HAROLD THURMAN, exercised control over the terms and conditions over Plaintiffs' employment and those of FLSA Collective Plaintiff and other Class members. With respect to Plaintiffs, Individual Defendant, HAROLD THURMAN, exercised functional control over the business and financial operations of the Corporate Defendants. Individual Defendant, HAROLD THURMAN, had the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs and Class members, and could reprimand employees.

16.     At all relevant times, the Corporate Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA and NYLL and the regulations thereunder.

17.     The businesses are operated as a joint enterprise, under the common control of the Individual Defendants. Specifically, the businesses are engaged in related activities, share common ownership and have a common business purpose.

18.     At all relevant times, the work performed by Plaintiffs, FLSA Collective Plaintiffs and Class members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

19.     Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt employees, including but not limited to cooks, food preparers, bartenders, waiters, bussers, food runners, delivery persons, cashiers, dishwashers, housekeeping persons and porters, employed by Defendants on or

after the date that is six years before the filing of the Complaint ("FLSA Collective Plaintiffs").

20.     At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs have been and are similarly situated, have had substantially similar job requirements and pay provisions, and have been and continue to be subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all of which have culminated in a willful failure to satisfy all statutory requirements for taking a tip credit. Defendants were not entitled to take any tip credits under the FLSA, or to compensate FLSA Collective Plaintiffs at sub-minimum wage base hourly rates.

21.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

22.     Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all current and former non-exempt employees, including but not limited to cooks, food preparers, bartenders, waiters, bussers, food runners, delivery persons, cashiers, dishwashers, housekeeping persons and porters, employed by Defendants on or after the date that is six years before the filing of the Complaint (the "Class Period").

23.     All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member may also be determinable from Defendants' records. For

purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

24.     The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than sixty (60) members of the Class.

25.     Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, including (i) failing to pay minimum wage, (ii) failing to provide wage statements in compliance with the New York Labor Law, and (iii) failing to provide wage and hour notices upon hiring and as required thereafter pursuant to the New York Labor Law. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures. Defendants unlawfully claimed a tip credit without satisfying all statutory requirements for taking a tip credit.

26.     Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

7

27.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

28.     Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide

Class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

29.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual lass members, including:

a)  Whether Defendants employed Plaintiff and the Class within the meaning of the New York law;

b)  What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class members properly;

c)  At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay the Class members for their work;

d)  Whether Defendants properly notified Plaintiff and the Class members of their hourly rate and overtime rate;

e)  Whether Defendants properly provided notice to members of the Tipped Subclass that Defendants were taking a tip credit;

f)  Whether Defendants provided proper wage statements informing the Tipped Subclass members of the amount of tip credit taken for each payment period, their proper overtime rate of compensation and other information required to be provided on wage statements, as required under the New York Labor Law;

g)  Whether Defendants established the tip payment structure for the Tipped Class members;

h)  Whether Defendants took the proper amount of tip credit allowance under the New York Labor Law;

i)   Whether Defendants required Tipped Subclass members to perform non-tipped duties exceeding twenty percent (20%) of each workday;

j)   Whether Defendants established the tip payment structure for Class members without the agreement or consent of the Class members;

k) Whether Defendants provided to Plaintiff and Class members proper wage and hour notices at date of hiring, per requirements of the New York Labor Law;

l) Whether Defendants provided to Plaintiff and Class members proper wage statements with each payment of wages as required by New York Labor Law; and

p)   Whether Defendants paid Plaintiff and class members the federal and state minimum wage for all hours worked.

## STATEMENT OF FACTS

30.   In or around July 2018, Plaintiff was hired by Defendants to work as a busser/server at Cafe Martinique, a Café located in the Hotel building, at 49 W 32nd Street, New York, NY, 10001. Plaintiff's employment with the Defendants was terminated in October 2019.

31.   From July 2018 to December 2018, Plaintiff worked five (5) days per week for eight (8) hours per day, for a total of forty (40) hours each week at an hourly rate of $8.65. From January 2019 to October 2019, the termination of Plaintiff's employment with Defendants, Plaintiff worked similar hours at an hourly rate of $10.00. During Plaintiff's employment with Defendants, FLSA Collective Plaintiffs, and Class members worked similar hours and were paid at similar rates.

32.   Plaintiff was compensated at sub-minimum base hourly rates, based on a purported tip credit. However, because Defendants failed to fulfill all requirements for a tip credit, all tip

credits taken were wrongfully. Similarly, FLSA Collective Plaintiffs and Class members were compensated at similar rates with invalid tip credits taken by the Defendants.

33.    Defendants failed to accurately keep track of the daily amount in tips earned by Plaintiff, FLSA Collective Plaintiffs and Class members. Defendants also failed to maintain proper employment records as required by law.

34.    Throughout his employment, Plaintiff was regularly required to spend more than twenty percent (20%) of his working time each shift performing non-tipped work. This non-tipped work included making coffee, ensuring the coffee station was stocked, polishing silverware and glassware, dishwashing all the plates/cutlery from room service and hotel parties, cutting bread, polishing silverware and glassware, cleaning floor, loading manager's car, and picking up phone calls for room service orders. Likewise, FLSA Collective Plaintiffs and Class members usually spent more than twenty percent (20%) of their time performing non-tipped tasks.

35.    Defendants instituted and mandated an illegal tip pooling scheme that Plaintiff, FLSA Collective Plaintiffs and Class members were required to participate in, even though they did not consent to such scheme. Specifically, from July 2018 to September 2019, Plaintiff was required to deliver food service orders to hotel rooms, all the tips Plaintiff received from which got pooled with waiters, even though they did not participate in room service delivery. Additionally, Plaintiff no longer has to do room service since September 2019, when new employees were hired for a new "Room Service" position and are not required to share their room service tips with Plaintiffs and Class Members.

36.    In addition, throughout his employment with Defendants, Plaintiff and other room service waiters were required to perform additional job duties which they did not get tips for. Specifically, Plaintiff and others must take out garbage if there was any, which is part of the work

of a porter or housekeeping person, when they picked up the dishes from hotel guests who ordered room service food delivery.

37.     Defendants never provided Plaintiff with wage notices, as required by the NYLL. Similarly, FLSA Collective Plaintiffs and Class members were never provided with any wage notices.

38.     Defendants did not provide Plaintiff with proper wage statements, in violation of the NYLL. Similarly, FLSA Collective Plaintiffs and Class members were not provided with proper wage statements.

39.     Defendants were not entitled to claim any tip credits under the FLSA or NYLL, because they (i) failed to properly provide notice to all tipped employees that Defendants were taking a tip credit in violation of the FLSA and NYLL, (ii) failed to provide proper wage statements informing tipped employees of the amount of tip credit taken for each payment period, or the hourly rate of tip credit deduction, in violation of the NYLL, (iii) caused tipped employees to engage in non-tipped duties exceeding 20% of each workday, or two (2) hours of each shift, in violation of the FLSA and NYLL, (iv) maintained an improper tip pool and misappropriated tips, and (v) failed to track the amount of tips received daily in violation of NYLL.

40.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and Class members, in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

41.     Plaintiff realleges by reference all allegations in the preceding paragraphs of this class and collective action Complaint as if fully set forth herein.

42.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).  Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

43.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

44.      At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.00.

45.     At all relevant times, Defendants had a policy and practice of failing to pay the statutory minimum wage to Plaintiffs for their hours worked. Defendants were also not entitled to claim any tip credits because they failed to satisfy the statutory requirements under the FLSA.

46.     Records, if any concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs are in the possession and custody of the Defendants. Plaintiff intends to obtain all records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

47.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

48.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated damages pursuant to the FLSA.

49.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid minimum wages, and an equal amount as liquidated damages.

50.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

51.     Plaintiff realleges by reference all allegations in the preceding paragraphs of this class and collective action Complaint as if fully set forth herein.

52.     At all relevant times, Plaintiff and Class members were employed by the Defendants within the meaning of the New York Labor Law, §§2 and 651.

53.     Defendants willfully violated Plaintiff and the Class members' rights by failing to pay them minimum wages in the lawful amount for hours worked.  As factually described above, Defendants were not entitled to claim any tip credits under the New York Labor Law.

54.     Defendants failed to properly notify employees of their hourly pay rate and overtime rate, in direct violation of the New York Labor Law.

55.     Defendants failed to provide a proper wage and hour notice, on the date of hiring and annually, to all non-exempt employees per requirements of the New York Labor Law.

56.     Defendants failed to provide proper wage statements with every payment as required by New York Labor Law § 195(3).

57. Due to Defendants' New York Labor Law violations, Plaintiff and Class members are entitled to recover from Defendants their unpaid minimum wages, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself, FLSA Collective Plaintiffs and Class members, respectfully request that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid minimum wages due under the New York Labor Law;

d. An award of statutory penalties as a result of Defendants' failure to comply with New York Labor Law wage notice and wage statement requirements;

e. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay minimum wage pursuant to the New York Labor Law;

f. An award of prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

g. Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

h. Designation of this action as a class action pursuant to F.R.C.P. 23;

i. Designation of Plaintiff as Representative of the Class; and

j. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: February 18, 2020

Respectfully submitted,

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs and the Class*

By: */s/ C.K. Lee*
        C.K. Lee, Esq.

Exhibit A



**NYC** Health

The City of New York

DEPARTMENT OF HEALTH AND MENTAL HYGIENE

52 W 33 ASSOCIATES LLC
PETIT POULET
52 WEST 33 STREET 1/F
NEW YORK, NY 10001

**PERMIT/LICENSE TYPE:**

FOOD SERVICE ESTABLISHMENT (GENERAL); ALSO MANUFACTURES FROZEN DESSERTS LICENSE

RECORD NUMBER: 416/2061    CODE: H25    CLASS/SUBCLASS: FSD

ISSUE DATE: 09/16/2019

EXPIRATION DATE: 09/30/2020

PERMITTEE/LICENSEE NAME: 52 W 33 ASSOCIATES LLC
PETIT POULET

ADDRESS OF PERMITTED ENTITY/LICENSED INDIVIDUAL:

52 WEST 33 STREET WEST 33 STREET
NEW YORK, NY 10001

This permit/license is issued to the individual person or other entity named above to conduct a business or other activity regulated by this Department. It is granted in accordance with provisions of the New York City Health Code or other law regulating this activity. This permit/license is not transferable to any other individual or entity or for use at any other premises and is subject to suspension or revocation for failing to comply with the Health Code or other applicable law.

*Oxiris Barbot*

OXIRIS BARBOT, MD
COMMISSIONER OF HEALTH AND MENTAL HYGIENE



**POST CONSPICUOUSLY**

COMPLAINTS MAY BE MADE BY PHONE TO 311 OR ONLINE AT NYC.GOV/311

Exhibit B

# About us

Home (index.html)   /   About us

Your New York City Residence...

# WELCOME TO THE MARTINIQUE NEW YORK



## Historic Hotel in the Heart of Midtown Manhattan

For over 100 years, The Martinique has elegantly reflected the rich history of its vibrant and dynamic location. The Martinique's vast lobby also featured an awe-inspiring mosaic-tile floor and an 18-story spiral staircase, both of which are still very much intact today. In 1916, department store magnate, Rodman Wanamaker, sponsored a luncheon at the Martinique, bringing together 35 prominent golf professionals and leaders of the game, which laid the groundwork to form the PGA. The formal birth of The Professional Golfers Association of America came nearly three months later on April 10, 1916 at the Martinique. Board members of the PGA continue to hold meetings at the Martinique to this day.

*The Martinique New York is rich in history and steps from world class shopping, dining and major attractions.*

At the turn of the last century, all the world came to Broadway to shop, dine, flirt, find amusement, and meet acquaintances," wrote Henry Collins Brown, curator of the Museum of the City of New York. In 1897, the Hotel Martinique on Broadway opened amidst the boom of hotel and theater life. Broadway was said to have a champagne sparkle with an artistic glow, and the trend setting culture found on this famous boulevard flourished. Around the same period, Pennsylvania Station, Macy's, and the extended PATH train made their

celebrated debut. It was the perfect time for William R.H. Martin, owner and namesake of the Hotel Martinique, to submit plans to dramatically increase the size of the Hotel Martinique. Martin hired the Hotel Martinique's original architect, Henry Hardenberg for the redesign and expansion. Hardenberg, a slender man, who favored a starched high collar and pearl stickpin, was known as one of the greatest architects of his time for building Castles in the Air. His artistry was built on structural strength that has endured for generations.

According to Christopher Gray, architectural historian "Hardenbergh designed buildings for long-term use, not short term profit". To his credit Hardenberg also designed the Dakota Apartments, the original Waldorf Astoria at Fifth Avenue, the Plaza Hotel and the famed Willard Hotel in Washington DC. A parade of celebrities, the actress Lillian Russell, Diamond Jim Brady, John Wanamaker, Mark Twain, and Oscar Hammerstein, were constant visitors at his architectural gems. With the expansion completed, the Hotel Martinique re-opened on December 21, 1910 to a fanfare of elegantly dressed guests who arrived in horse drawn carriages. They were immediately impressed when they entered the vast lobby, which featured an inspiring mosaic tile floor and an 18-story spiral staircase, both of which are intact today.

Significant to the legendary history of the Martinique is the formation of the Professional Golfers Association of America. On April 10, 1916 department store magnate Rodman Wanamaker met with other prominent golfers at the Hotel Martinique, to sign the constitution forming the PGA of America. On August, 31st, 2011, the PGA Gallery at the Radisson Martinique officially opened in grand style with a ribbon cutting ceremony led by the hotel's General Manager and members of the PGA. To celebrate the event, Mayor Michael Bloomberg proclaimed August 31st PGA Day in New York City. The Radisson Martinique was presented with a Proclamation that will be displayed in the new PGA Gallery at the Martinique.

Just steps from the Martinique, construction of the Empire State Building began on March 17, 1930. Just over a year later, President Hoover pressed a button in Washington, D.C. officially opening and turning on the Empire State Building's lights for the first time. At that same moment, guests celebrated at the Martinique, by lifting  Their glasses and toasting their new neighbor, the Empire State Building. On the register of Historic Hotels of America, the Martinique still stands amidst the excitement of Midtown Manhattan, near the Empire State Building, Madison Square Garden, Penn Station, Macy's Flagship Store at Herald Square, Chelsea Art Galleries, and SoHo Bistros and Restaurants. Just as it was during the Gilded Age, the Hotel remains a symbol of Grand Hospitality, in the same stunning Beaux Art Building of 1896.

# OUR SERVICES

Our main goal is to make your stay in Midtown Manhattan as comfortable and convenient as possible. Relax in one of our 531 spacious rooms and suites, and enjoy thoughtful amenities like room service and more. Our central location makes it easy to walk to iconic New York City favorites like Times Square, Madison Square Garden and Broadway shows.





### Parking

There is a parking garage conveniently located across from the hotel. Long term and short term parking is available.



### Fitness Center

We are pleased to introduce our new fitness facilities in a brand new space on the lower level - featuring all new equipment, complimentary water and towel service and private key access.



### Restaurant

Petit Poulet ~ French Bistro & Wine Bar serves a la carte breakfast, lunch, and dinner from 6:30am until 11:00pm. In a charming and intimate setting, Petit Poulet is an ode to classic Parisian bistros.



**Banquet**

Our meeting rooms, boardroom and grand ballroom are perfect for your next catered event or meeting. What ever your event, the Martinique staff is ready to create your perfect day.



New York City seen from the Queensboro Bridge is always the city seen for the first time, in its first wild promise of all the mystery and beauty in the world...

*F. Scott Fitzgerald*



(https://hiltonhonors3.hilton.com/en/index.html)

(https://curiocollection3.hilton.com/en/index.html)

𝕏 (https://twitter.com/TheMartinique)        𝐟 (https://www.facebook.com/themartinique)

📷 (https://www.instagram.com/themartinique/)

SITE USAGE AGREEMENT (HTTPS://HILTONHONORS3.HILTON.COM/EN/POLICY/SITE-USAGE-AGREEMENT/ENGLISH.HTML)

COOKIES STATEMENT (HTTPS://HILTONHONORS3.HILTON.COM/EN/POLICY/COOKIES-STATEMENT/ENGLISH.HTML)

@ HILTON 2019 (HTTPS://HILTONHONORS3.HILTON.COM/EN/POLICY/SITE-USAGE-AGREEMENT/ENGLISH.HTML)

HILTON HONORS DISCOUNT (HTTPS://WWW3.HILTON.COM/EN/TERMS/HHONORS-DISCOUNT.HTML)

PRIVACY POLICY (HTTPS://HILTONHONORS3.HILTON.COM/EN/POLICY/GLOBAL-PRIVACY-STATEMENT/INDEX.HTML)

PACKAGE POLICY (HTTPS://WWW.THEMARTINIQUE.COM/PACKAGEPOLICY.HTML)

© 2020 Martinique New York on Broadway. All rights reserved.

Exhibit C

# RESTAURANTS

KELLARI (HTTPS://KELLARIGROUP.COM) > RESTAURANTS

## *Restaurants*

### OUR RESTAURANTS

ALL    CESCA    ELYSSIAN FIELDS CAFE    KELLARI DC    KELLARI NY    MARTINIQUE CAFE    PETIT POULET    STRIPHOUSE

 

## NEWSLETTER

Sign up with your email to get our latest news

Enter Your Email Address                    SIGN UP

## ABOUT

The Kellari Hospitality Group specializes in helping you celebrate life's most important moments. Our beautiful private and semi-private dining spaces, customizable menus and knowledgeable and friendly staff ensure that your event will be unforgettable.



## CONTACT TIMES

(HTT    (HTT    (HTT    (HTT    (HTT
PS:/    PS:/    PS:/    PS:/    PS:/
/W      /TW     /W      /W      /W
Monday - Thursday                              ------ 08:00 - 21:00
WW      ITTE    WW      WW      WW

Wednesday
Thursday	Friday   LINK   PINT   INST
Saturday
Sunday	M/S   EDIN   ERE   AGR
Public Holidays
OK.C   AAK   .CO   ST.C   AM.C

INSTAGRAM   M/C   OM/   OM/

KEL   S)   OMP   SAK   KEL
LARI   ANI   TIP(   LARI

Instagram did not return a 200.

Follow Us (//instagram.com/https://www.instagram.com/kellariny/)

HOS   /728   S/)   NY/)

PITA   794/

LITY   )

/)

------ 08:00 - 21:00
------ 08:00 - 21:00
------ 08:00 - 18:00
------ 12:00 - 14:00
------ 12:00 - 14:00

© Copyrights 2019 - All Rights Reserved - Designed And Powered By Adviser (Https://Www.Adviser.Gr)